UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
*Southern Division*

| | | |
|---|---|---|
| **DOUGLAS LARCOMB,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Civil Action No. GJH-21-2759** |
| **J. CHARLES SMITH, III, et al.,** | * | |
| **Defendants.** | * | |
| | *** | |

## MEMORANDUM OPINION

Plaintiff Douglas Larcomb, a prisoner currently confined at Maryland Correctional Training Center ("MCTC"), brings this civil rights action against Defendants J. Charles Smith, III; Frederick County, Maryland; the State of Maryland; and the United States of America concerning his detention at the Frederick County Adult Detention Center ("FCADC"). ECF No. 1. In his initial complaint he alleged that he was denied bail[1] and has "aggressive cancer" that has not been treated for "over 200 days." ECF No. 1 at 3.[2]  The initial complaint sought only injunctive relief. *Id*.

Given the serious nature of Plaintiff's allegation concerning his medical care, which potentially impacted his safety and well-being, and in light of the fact that Plaintiff was committed to the custody of the Frederick County Sheriff, on November 1, 2021, the Court entered an Order directing the Frederick County Attorney to show cause why relief should not be granted.  ECF No. 3.  On November 22, 2021, the Order was returned to the Court as

---

[1] Larcomb's claims regarding his bail status are before the Court in *Larcomb v. Smith, et al.*, Civil Action No. GLR 21-2392 (D. Md.) and will not be considered in the context of this case.

[2] The docket numbers and page references are those assigned by the Court's electronic docket.

undeliverable to Plaintiff.  ECF No. 4.  As such, on December 9, 2021, the Court dismissed the Complaint without prejudice, due to Plaintiff's failure to apprise the Court of his location.  ECF No. 5.

On March 9, 2022, Plaintiff filed a Motion to Reopen the case, stating he was detained at FCADC and his medical condition remained unchanged. The Motion to Reopen was granted and the Frederick County Attorney was directed to show cause why relief should not be granted. ECF No. 8.  A response to the Order was filed, which included pertinent portions of Plaintiff's medical records. ECF No. 12. Defendant Frederick County also filed a Motion to Seal (ECF No. 13), which is not opposed by Plaintiff.

Thereafter, on April 27, 2022, Plaintiff filed an Amended Complaint, asserting the same claims regarding bail and lack of medical care, naming the same Defendants, and adding a claim for damages in the amount of a "billion dollars."  ECF No. 14. Defendant Frederick County filed a Motion to Dismiss, or in the Alternative for Summary Judgment (ECF No. 18) and response to the Complaint (ECF No. 20). Due to the inclusion of portions of Plaintiff's medical records, Defendants again filed a Motion to Seal (ECF No. 19), which is unopposed by Plaintiff.

Plaintiff then filed a number of "Motions," which the Court generously construes as opposition responses. *See e.g*., ECF No. 24 (Motion to Review); ECF No. 25 (Motion for Injunctive Relief); ECF No. 26 (Supplement of ECF Nos. 24 and 25); ECF No. 27 (Motion to Enter Into Evidence); ECF No. 29 (Joint Motion to Review and Enter Evidence).

 Lastly, Plaintiff has advised the Court that he is no longer detained at the FCDAC, but rather is in the custody of the Maryland Department of Corrections housed at MCTC.  ECF No. 30.

No hearing is necessary to resolve the pending motions. *See* Loc. R. 105.6 (D. Md. 2021). For the following reasons, Plaintiff's requests for injunctive relief are denied, Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment is denied as moot, Plaintiff's Motions to Review, for Injunctive Relief, to Supplement, to Enter Into Evidence, and to Review and Enter Evidence are denied, and Defendant's Motions to Seal are granted.

## I.    BACKGROUND

In his Complaint, as Amended, Plaintiff states that he has been diagnosed with cancer and has been denied treatment while housed at FCADC awaiting trial.  ECF Nos. 1 and 14.

In October of 2021, while Plaintiff was housed at FCADC awaiting trial, the Circuit Court for Frederick County determined he was incompetent to stand trial and committed him to the Maryland Department of Health. ECF No. 18-2, ¶ 5 (DeLauter Decl.); ECF No. 18-3. Plaintiff was transferred to Springfield Hospital Center on October 29, 2021. ECF No. 18-2, ¶ 6; *see also* ECF No. 18-4. Plaintiff did not return to FCADC until January of 2022. ECF No. 18-6, ¶ 13.

Shortly after Plaintiff first came into custody at FCADC, staff began gathering information related to his cancer diagnosis and his stated desire to participate in a clinical trial offered by the National Institute of Health ("NIH")/National Cancer Institute ("NCI").  ECF No. 18-6, ¶¶ 5, 12 (Fernholz Decl.); ECF No. 18-12 at 1. Plaintiff was evaluated by Dr. Keith Wilson, Jr. on April 1, 2021, and the cancer diagnosis was discussed. ECF No. 18-12 at 2.

Ms. Fernholz, Health Services Administrator for FCADC, attempted to facilitate Plaintiff's enrollment in the NIH/NCI clinical study, however, on July 2, 2021, she was informed that Plaintiff could not participate in the trial while incarcerated. ECF No. 18-6 , ¶¶ 6, 7. Fernholz requested written confirmation that Plaintiff was not eligible to participate in the trial

(*id.*, ¶ 8; *see also* ECF No. 18-8) but did not receive the denial in writing. ECF No. 18-6, ¶ 8. On July 6, 2021, in response to Plaintiff's medical request, Fernholz advised him that NIH/NCI would not allow his participation in the trial.  ECF No. 18-2, ¶ 9; ECF No. 18-9.

Plaintiff next saw Dr. Wilson on July 8, 2021, and again discussed his cancer diagnosis. ECF No. 18-2 at 2-3.

On September 6 and 7, 2021, Plaintiff filed medical requests, stating that he did not believe NIH/NCI denied his request to participate in the clinical trial. ECF No. 18-6,  ¶10. He also requested the contact information for the person who was contacted at NIH/NCI. *Id.*; ECF No. 18-2; ECF No. 18-10.  Fernholz responded to Plaintiff providing him the requested information. *Id.*

Plaintiff was seen by Dr. Wilson on October 17, 2021. ECF No. 18-2, ¶ 11; *see also* ECF No. 18-11 at 4.  Dr. Wilson again discussed with Plaintiff his cancer diagnosis. It was noted that blood work had been ordered and upon its receipt a determination would be made whether Plaintiff required an outside medical consultation. ECF No. 18-11 at 6.  However, before Plaintiff could be brought in for a follow-up visit and his blood work reviewed, he was transferred out of the facility. ECF No. 18-6, ¶ 12; ECF No. 18-4; ECF No. 18-12 at 11.

When Plaintiff returned to FCADC in late January 2022, two attempts were made to schedule Plaintiff to be seen by the WellPath physician.[3] *See* ECF No. 18-6, ¶ 13; CF No. 18-12 at  12-13. However, both appointments were marked to be rescheduled. *Id.*

Plaintiff had a complete physical on April 19, 2022. ECF No. 18-6, ¶ 14; ECF No. 18-13. At that time, the order for bloodwork was renewed and a follow-up appointment to discuss chronic issues was to be scheduled. ECF No. 18-6, ¶ 14; ECF No. 18-13 at 5. Ms. Fernholz avers

_____

[3] The contract to provide medical services to detainees at FCADC changed from WellPath to NaphCare on April 1, 2022. *See* ECF No. 12 at 4.

that she was advised the follow up appointment would occur sometime in May of 2022, and the

results of the tests would be discussed and a treatment protocol set for Plaintiff's chronic

conditions, including his cancer diagnosis. ECF No. 18-6, ¶ 14.

On May 5, 2022, Plaintiff met with a NaphCare nurse practitioner ("NP") to discuss the

results of his lab work.  The NP noted Plaintiff was not compliant with certain medications and:

> Patient not willing to explore any other treatment options for his prostate cancer.
> He reported that he would only accept treatment options (focal laser ablation and
> immunotherapy) offered by his doctors at [Johns Hopkins Hospital] and [the
> National Institute of Health] (Dr. Siddiqi, Dr. Pinto and Dr. Gullery). He reported
> that the judges and state attorney have refused to grant him bail to follow up with
> his doctors. Patient advised to notify providers if he changes his mind about follow
> up care for his cancer[.]

ECF No. 18-14. As to the plan for future treatment, the NP reiterated that Plaintiff was unwilling

to explore any other options to treat his prostate cancer and would only accept the treatment

options offered by his doctors at Hopkins and NIH. *Id*.

Plaintiff was seen again by the NP on May 17, 2022, regarding his cancer diagnosis.  It

was recorded that Plaintiff reported "he was diagnosed around feb [sic] 2021." Per records from

Dr. Coyne, "cancer was a Gleason 4+3 as of 3/17/2021. Dwight reports he was going to enter a

clinical trial with NIH but was not able to due to incarceration. Reports he feels ok but needs to

have treatment for his cancer." ECF No. 18-15.  Plaintiff requested to be seen by Dr. Oh, his

former oncologist-hematologist. *Id*. It was noted that Plaintiff would be evaluated by Dr. Oh if

possible otherwise he would see the county approved oncologist. *Id*.

## II.    INJUNCTIVE RELIEF

Plaintiff's requests for injunctive relief contained in his initial filing (ECF No. 1),

Amended Complaint (ECF No. 14), and Motion for Injunctive Relief (ECF No. 25) are denied.

To the extent Plaintiff states his disagreement with the medical care provided to him while

detained at FCADC and seeks an Order directing FCADC to provide particular care, the requests are denied as Plaintiff is no longer housed at FCADC. ECF No. 30.

Where injunctive or declaratory relief is requested, it is possible for events occurring subsequent to the filing of the complaint to render the matter moot. *See Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991) (transfer of a prisoner moots his Eighth Amendment claims for injunctive and declaratory relief); *see also Slade v. Hampton Rd's Reg'l Jail*, 407 F.3d 243, 248-49 (4th Cir. 2005) (pre-trial detainee's release moots his claim for injunctive relief); *Magee v. Waters*, 810 F.2d 451, 452 (4th Cir. 1987) (holding that the transfer of a prisoner rendered moot his claim for injunctive relief). Plaintiff's requests for medical care were directed to his confinement in FCADC. As he is no longer in the custody of FCADC (ECF No. 33), his requests for injunctive relief are moot.

However, this Court and the Fourth Circuit have made clear that transfer does not render claims for damages moot. *See Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991) (holding that transfer rendered moot a prisoner's claims for injunctive and declaratory relief, but not claims for damages); *Taylor v. Rogers,* 781 F.2d 1047, 1048 n.1 (4th Cir. 1986) (same); *Ali v. Romero, et al.*, No. PWG-16-186, 2017 WL 3412078, at 2 (D. Md. 2017) (finding that Plaintiff's requests for injunctive relief were moot once he was transferred out of the facility but his "request for money damages, however, survives his transfer from the Detention Center"). Accordingly, Plaintiff's Amended Complaint (ECF No. 14), which asserts a damage claim in addition to the request for injunctive relief must be reviewed.

## III.    AMENDED COMPLAINT

Because Plaintiff has been granted leave to proceed in forma pauperis the Amended Complaint must be reviewed by the Court with respect to the 28 U.S.C. §§ 1915(e)(2)(B) and

1915A criteria.  The Court must dismiss a complaint if the action (i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief.  28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b). For the reasons discussed below, Plaintiff's Amended Complaint is dismissed with prejudice as to unserved Defendants J. Charles Smith, III; Frederick County, Maryland; the State of Maryland; and the United States of America as frivolous and for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

Because he is proceeding pro se, Plaintiff's submissions are liberally construed.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nonetheless, this Court must also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial."  *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (internal quotation marks omitted.)

First, Plaintiff's claims against the State of Maryland cannot proceed. Under the Eleventh Amendment to the United States Constitution, a state, its agencies, and departments are immune from suits in federal court brought by its citizens or the citizens of another state, unless it consents.  *See Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).  "It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."  *Id.*, citing *Florida Department of Health v. Florida Nursing Home Assn.,* 450 U.S. 147 (1981) (per curiam). While the State of Maryland has waived its sovereign immunity for certain types of cases brought in state courts, *see* Md. Code Ann., State Gov't § 12-202(a), it has not waived its immunity under the Eleventh Amendment to suit in federal court.  "A State's constitutional interest in immunity encompasses not merely *whether* it may be sued, but *where* it may be sued."

7

*Halderman*, 465 U.S. at 100 (emphasis in original).  Thus, Plaintiff's complaint against the State of Maryland is barred by the Eleventh Amendment.

Next, Plaintiff's claim against Frederick County State's Attorney J. Charles Smith, III also may not proceed. Maryland's State's Attorneys are quasi-judicial officers who enjoy absolute immunity when performing prosecutorial, as opposed to investigative or administrative functions.  *See Imbler v. Pachtman*, 424 U.S. 409 422-23 (1976).  Absolute immunity is designed to protect *judicial process*; thus, the inquiry is whether a prosecutor's actions are closely associated with judicial process.  *See Burns v. Reed*, 500 U.S. 478, 479 (1991) (citing *Imbler*, 424 U.S. at 423-23).  The decision as to "whether and when to prosecute" is "quasi-judicial," therefore, defendant in the instant case enjoys absolute immunity.  *See Lyles v. Sparks*, 79 F.3d 372 377 (4th Cir. 1996). Accordingly, to the extent Plaintiff complains of actions taken by J. Charles Smith, III that led to his confinement, the claims may not proceed.

Lastly, without deciding whether Plaintiff has properly identified any of the named Defendants as persons amenable to suit under § 1983, his claims against them cannot proceed because he has failed to allege their personal participation in the stated claims.

The main thrust of Plaintiff's § 1983 claims is that Defendants have been deliberately indifferent in regard to Plaintiff's serious medical needs. ECF Nos. 1 and 14. 1 at 5. "The constitutional protections afforded a pre-trial detainee as provided by the Fourteenth Amendment are co-extensive with those provided by the Eighth Amendment." *Barnes v. Wilson*, 110 F.Supp.3d 624, 629 (D. Md. 2015) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)).  "Pretrial detainees are entitled to at least the same protection under the Fourteenth Amendment as are convicted prisoners under the Eighth Amendment." *Young v. City of Mt. Ranier*, 238 F.3d 567, 575 (4th Cir. 2001) (citing *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 243-44 (1983); *Hill*

8

*v. Nicodemus*, 979 F.2d 987, 991-92 (4th Cir. 1992).  Thus, deliberate indifference to the serious

medical needs of a pretrial detainee violates the Due Process Clause.  *Id*. (citing *County of*

*Sacramento v. Lewis*, 523 U.S. 833, 845-46 (1998) (concluding that, because it is sufficient for

liability under the 8th Amendment, "deliberately indifferent conduct must also be enough to

satisfy the fault requirement for due process claims based on the medical needs of someone

jailed while awaiting trial").

Liability under § 1983, however, attaches only upon personal participation by a defendant

in the constitutional violation. If a plaintiff has not alleged any personal connection between a

defendant and a denial of their constitutional rights, the claim must fail. *See Vinnedge v. Gibbs*,

550 F.2d 926, 928 (4th Cir. 1977). It is well established that the doctrine of respondeat superior

does not apply in § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no

respondeat superior liability under § 1983); *see also Trulock v. Freeh*, 275 F.3d 391, 402 (4th

Cir. 2001) (no respondeat superior liability in a Bivens suit). Rather, liability of supervisory

officials under § 1983 "is premised on 'a recognition that supervisory indifference or tacit

authorization of subordinates' misconduct may be a causative factor in the constitutional injuries

they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir.

2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). Consequently, supervisory

liability under § 1983 must be supported with evidence that: (1) the supervisor had actual or

constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and

unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's

response to the knowledge was so inadequate as to show deliberate indifference to or tacit

authorization of the alleged offensive practices; and (3) there was an affirmative causal link

between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

Plaintiff fails to plead any factual details indicating that any of the named Defendants, J. Charles Smith, III; Frederick County, Maryland; State of Maryland; or United States of America had actual or constructive knowledge of a subordinate's behavior that risked constitutional injury to Plaintiff. Nor has Plaintiff alleged that any of the named Defendants interfered with any medical provider's performance or tacitly authorized a constitutional violation. The Court thus dismisses Plaintiff's §1983 claim against the named Defendants for failure to state a claim.

Finally, the Amended Complaint fails to provide any information that might lead to a reasonable conclusion that some plausible cause of action has accrued on Plaintiff's behalf as to any of the named Defendants. For this reason, Plaintiff will not be provided with an opportunity to further amend the Complaint.  When considering whether a claim is frivolous, § 1915(e)(2) grants Courts "the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless."  *Neitzke v. Williams*, 490 U.S. 319, 327 (1989).  A Complaint is frivolous where, as here, "it lacks an arguable basis either in law or in fact."  *McLean v. United States*, 566 F.3d 391, 399 (4th Cir. 2009) (quoting *Neitzke*, 490 U.S. at 327).

### III.     CONCLUSION

For the foregoing reasons, Plaintiff's requests for injunctive relief are DENIED,

Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment is DENIED as

moot, Plaintiff's Motions to Review, for Injunctive Relief, to Supplement, to Enter Into Evidence

and to Review and Enter Evidence are DENIED, and Defendant's Motions to Seal are

GRANTED.

A separate Order follows.


Date: <u>October  6, 2022</u>                              ____/s/_____
                                                                               GEORGE J. HAZEL
                                                                               United States District Judge

11